UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL DENTON,

            Plaintiff,

    v.

TIM THRASHER *et al*.,

            Defendants.

CASE NO. 3:20-cv-05968-TSZ-JRC

REPORT AND RECOMMENDATION

NOTED FOR: May 14, 2021

This 42 U.S.C. § 1983 civil rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4. Before the Court is defendants' motion to dismiss. Dkt. 44. Separately, the Court also addresses plaintiff's failure to respond to its order directing submission of service information for unserved defendant "Dr. Peterson." Dkt. 58.

Plaintiff alleges multiple claims arising out of his long-term solitary confinement and alleged retaliation for his litigation and grievance activity. Defendants have moved to dismiss, contending that plaintiff's solitary confinement claims duplicate similar claims in plaintiff's

1  other pending cases, and that plaintiff has failed adequately to allege his remaining claims.

2  Because this matter and plaintiff's other pending cases arise out of different institutions, involve

3  largely different defendants and do not present sufficiently identical claims or relief, the Court

4  declines, without prejudice, to recommend dismissal of plaintiff's solitary confinement claims.

5  However, the Court recommends that the remainder of defendants' motion be granted. Plaintiff's

6  retaliation claims should be dismissed because plaintiff failed adequately to allege either the

7  personal participation of the named defendants or the elements of a retaliation claim—but

8  plaintiff should be permitted to remedy those defects in an amended complaint. Plaintiff's claims

9  for denial of medical marijuana and his challenge to the prison's policy excluding sexually

10  explicit materials, however, should be dismissed with prejudice because they fail as a matter of

11  law and amendment would be futile.

12  **UNSERVED DEFENDANT**

13  As an initial matter—separate from defendants' motion to dismiss—the Court addresses

14  plaintiff's failure to provide sufficient identification or location information to enable service of

15  process upon defendant "Dr. Peterson." On March 11, 2021, the Court issued an order directing

16  plaintiff to provide the complete name and address of named defendant Dr. Peterson, who has

17  not been served. Dkt. 58. Plaintiff was ordered to respond by April 12, 2021 and has not done so.

18  Even when, as here, service of the summons and complaint upon defendants is directed

19  by the Court, plaintiff continues to bear the burden of providing accurate and sufficient

20  information to effect service. *See  Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994)

21  *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *see also* Fed. R. Civ. P.

22  4. When an *in forma pauperis* plaintiff fails to provide the Court with accurate and sufficient

23

24

1    information to effect service of the summons and complaint, it is appropriate for the Court to

2    dismiss *sua sponte* the unserved defendant. *See Walker*, 14 F.3d at 1421–22.

3        Pursuant to Fed. R. Civ. P. 4(m), "if a defendant is not served within 90 days after the

4    complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss

5    the action without prejudice against that defendant or order that service be made within a

6    specified time." Here, Plaintiff was provided notice but has supplied no address at which

7    defendant Dr. Peterson can be served, and more than 90 days have passed since the filing of the

8    second amended complaint. Accordingly, the Court recommends that plaintiff's claims against

9    defendant Dr. Peterson be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

10                            **BACKGROUND**

11        Plaintiff, who is proceeding *pro se* and *in forma pauperis*, is a prisoner currently confined

12    at Stafford Creek Corrections Center ("SCCC"). Plaintiff's brings this action under 42 U.S.C. §

13    1983 against 23 defendants who are SCCC or Department of Corrections ("DOC") staff.

14        Plaintiff's Claim I alleges that defendants Tim Thrasher (DOC housing administrator),

15    Karie Rainer (DOC mental health director), Stephanie Baltzell (SCCC max custody unit

16    manager), William Barr (SCCC unit counselor) and Scott Frakes (DOC deputy director) violated

17    plaintiff's Fifth, Eighth and Fourteenth Amendment rights and Title II of the Americans with

18    Disabilities Act ("ADA") by failing to release plaintiff from solitary confinement in disregard of

19    a mental health evaluation diagnosing plaintiff with multiple conditions resulting in part from

20    long term solitary confinement. Dkt. 14 at 3–4. Plaintiff also claims that defendants are holding

21    him indefinitely in maximum custody classification and solitary confinement in retaliation for

22    other pending lawsuits he has brought against prison and DOC staff. *Id.*

23

24

1    Claim II alleges that SCCC Corrections Officers T. Sharp, Troy Aidan, Wyatt Hull,

2    Sergeant Vincent Stroup, Mario Fernandez, Gabe Forrest, Donald Evans, Kern Tyler, A.

3    Collechi, Joshua Sutherby, Karlyanne Roberts-Green and Snyderwease (collectively, the

4    "Corrections Officer Defendants") addressed plaintiff with racial slurs and insults and filed false

5    reports of assaults for purposes of financial gain from an outside organization supporting officers

6    who are victims of assault, all in retaliation for plaintiff's prior lawsuits and grievances. Dkt. 14

7    at 8–11. Plaintiff further alleges that defendant Ron Haynes (SCCC Superintendent) failed to

8    respond to plaintiff's grievances complaining of falsified assault infractions, and that Haynes,

9    together with DOC supervisors Frakes, Russell and Sinclair knew about the falsified reports and

10   failed to stop them. *Id*. at 11.

11    Claim III alleges that defendants Rainer, Frakes, Russell and Haynes, together with

12   unserved defendant "Dr. Peterson," denied plaintiff medical marijuana in the form of THC pills

13   for his Post Traumatic Stress Disorder ("PTSD") and headaches in violation of the Eighth and

14   Fourteenth Amendments. Dkt. 14 at 13–16.

15    Claim IV alleges that defendants Baltzell, Frakes, Haynes and Corrections Officer Kern

16   Tyler enforced sanctions denying plaintiff access to commissary items, JPay, visitation,

17   telephone and weightlifting, in retaliation for plaintiff's pending lawsuits and grievance filings.

18   Dkt. 14 at 17–19.

19    Claim V contends that SCCC Superintendent Ron Haynes and SCCC mail room officer

20   Bill Tuffree violated plaintiff's First Amendment rights by enforcing a DOC ban on sexually

21   explicit materials, which resulted in the rejection of magazines, catalogues and photos of

22   plaintiff's girlfriend. Dkt. 14 at 19–21.

23

24

1    Finally, plaintiff's Claim VI asserts that Superintendent Haynes, Sergeant Stroup,

2    counselor Baltzell and SCCC disciplinary hearings officer L'Heureux violated plaintiff's First

3    Amendment rights by issuing and enforcing a "no reading material" disciplinary sanction,

4    pursuant to which plaintiff was deprived of all incoming books and periodicals. Dkt. 14 at 23.

5    Plaintiff also alleges that, as a result of this sanction, SCCC staff confiscated and destroyed

6    books, publications and legal documents from his cell in violation of the Fourteenth Amendment

7    and in retaliation for plaintiff's pending lawsuits. *Id*. at 24.

8    Plaintiff seeks injunctive relief and compensatory and punitive damages. Dkt. 14 at 29–

9    34.

10    **STANDARD OF REVIEW**

11    A complaint must contain a "short and plain statement of the claim showing that the

12    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) of

13    the Federal Rules of Civil Procedure can be granted only if the complaint, with all factual

14    allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell*

15    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Mere conclusory statements in a complaint

16    and "formulaic recitation[s] of the elements of a cause of action" are not sufficient. *Id.*; *Chavez v.*

17    *United States*, 683 F.3d 1102, 1108–09 (9th Cir. 2012). "Dismissal can be based on the lack of a

18    cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

19    theory." *Ballistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

20    > To survive a motion to dismiss, a complaint must contain sufficient factual matter,
   > accepted as true, to "state a claim to relief that is plausible on its face." A claim has

21    > facial plausibility when the plaintiff pleads factual content that allows the court to
   > draw the reasonable inference that the defendant is liable for the misconduct

22    > alleged. The plausibility standard is not akin to a probability requirement, but it
   > asks for more than a sheer possibility that a defendant has acted unlawfully.

23

24

1    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570). The

2    pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."

3    *Id*.

4         While the Court must accept all the allegations contained in the Complaint as true, the

5    Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* When a

6    plaintiff is proceeding *pro se*, his allegations must be viewed under a less stringent standard than

7    allegations of plaintiffs represented by counsel. *Haines v. Kerner,* 404 US 519 (1972), *reh'g*

8    *denied,* 405 U.S. 948 (1972); *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en

9    banc) (petitioner should be afforded the "benefit of any doubt").

10        While the court can liberally construe a plaintiff's complaint, it cannot supply an essential

11   fact an inmate has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (*quoting*

12   *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). The court

13   need not accept as true unreasonable inferences or conclusory legal allegations cast in the form

14   of factual allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

15        If a claim is subject to dismissal, the Court "must provide the [prisoner] with notice of the

16   deficiencies of his or her complaint and an opportunity to amend the complaint prior to

17   dismissal." *McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992), *overruled on other grounds*

18   *by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). On the other hand, leave to amend

19   need not be granted "where the amendment would be futile or where the amended complaint

20   would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

21                              **PROCEDURAL HISTORY**

22        Plaintiff was granted *in forma pauperis* status on October 28, 2020. Dkt. 8. Plaintiff's

23   complaint was filed the same day, *see* Dkt. 9. Plaintiff was given leave to file an amended

24

complaint (Dkt. 13), which was docketed on October 30, 2020 and is the operative complaint in this case. Dkt. 14. Defendants filed their motion to dismiss, together with a *Rand* notice, on December 29, 2020. Dkt. 44. Plaintiff filed a response. Dkt. 55. Defendants filed a reply. Dkt. 56. Plaintiff has submitted a surreply, which was not authorized by the Court. Dkt. 57.

## MATERIALS FOR CONSIDERATION

Plaintiff's complaint attaches exhibits, which may be considered in a motion to dismiss. *See  Gumataotao v. Dir. of Dep't of Revenue & Tax'n*, 236 F.3d 1077, 1083 (9th Cir. 2001).

Plaintiff filed a 43-page response to defendant's motion (Dkt. 55), exceeding the length permitted by the Local Civil Rules ("LCR") by 19 pages without seeking the required leave of the Court. LCR 7(e), (f). Defendants request that the Court not consider the overlength pages. Dkt. 56 at 2. The Court will not grant the requested relief for this filing, but plaintiff is cautioned that in the future he must seek leave of court before filing a document that exceeds the page limits of the local rules. A *pro se* plaintiff must comply with court rules and deadlines just as any other party would be expected to follow the court rules. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012).

Plaintiff also filed a surreply responding to defendants' reply brief. Dkt. 57. The Local Rules permit surreplies only for the limited purpose of bringing a motion to strike—and even in that event, the filing may only be made with leave of court, may not exceed three pages and must be restricted to the request to strike. LCR 7(g). Plaintiff's filing fails to comply with all of these requirements. It was filed without leave of the Court, does not seek to strike any material but instead repeats arguments made in plaintiff's response, and is 20 pages with an additional 22 pages of attachments. Because the surreply largely repeats plaintiff's response memorandum, the Court has not considered it. In the future, any unauthorized surreply will be stricken.

1

**DISCUSSION**

2      The first step in a § 1983 claim is to identify the specific constitutional right allegedly

3  infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To state a claim for relief under 42

4  U.S.C. § 1983, at least two elements must be met: (1) the alleged infringement must have been

5  proximately caused by a person acting under color of state law and (2) defendants' conduct must

6  have deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws

7  of the United States. *Paratt v. Taylor*, 451 U.S. 527 (1981). A third element of causation is

8  implicit in the second element. *See Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429

9  U.S. 274, 286–87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390–91 (9th Cir. 1980), *cert denied*,

10  449 U.S. 875 (1980). A plaintiff must allege facts showing how individually named defendants

11  caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v.*

12  *IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

13      Defendants do not contest that they were acting under the color of state law and thus, the

14  Court addresses whether defendants' conduct deprived plaintiff of any constitutional rights.

15

**I. Solitary Confinement Claim**

16      Defendants argue that plaintiff has brought claims challenging his continued detention in

17  solitary confinement in two additional lawsuits, which are currently pending. Dkt. 44 at 5–7

18  (citing *Denton v. Thrasher*, No. 3:18-cv-0517-DWC ("*Denton I*"); *Denton v Rainer*, No. 3:19-

19  cv-05743-BHS-TLF ("*Denton II*")). Defendants contend plaintiff's Claim I in this matter

20  duplicates claims in *Denton I* and *Denton II* and should be dismissed to avoid conflicting

21  outcomes. *Id*.

22      District courts retain broad discretion to control their dockets. *Adams v. California Dep't*

23  *of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) *overruled on other grounds by*

24

1   *Sturgell,* 553 U.S. 880, 904 (2008). When faced with a duplicative action, after weighing the

2   equities of the case, the district court may exercise its discretion and may, among other options,

3   "stay [the later] action pending resolution of the previously filed action, enjoin the parties from

4   proceeding with it, or consolidate both actions. *Id.* (citing *Curtis v. Citibank, N.A.,* 226 F.3d 133,

5   138–39 (2d Cir.2000) and *Walton v. Eaton Corp.,* 563 F.2d 66, 70–71 (3d Cir.1977)). To

6   determine whether a complaint is duplicative, courts borrow from the test for claim preclusion.

7   *Adams*, 487 at 688–89. Thus, the analysis considers whether the causes of action and relief

8   sought, as well as the parties or privies to the action, are the same. *Id*.

9        The Court concludes that there is not sufficient identity between the parties, claims and

10   relief sought to support dismissal of plaintiff's Claim I at this time.

11        First, this matter arises out of events at a different institution from the claims in *Denton I*

12   and *Denton II.* The Amended Complaint in this matter alleges conduct by defendants who (other

13   than six DOC headquarters employees) are overwhelmingly SCCC staff. Dkt. 14 at 35. In

14   contrast, the Fourth Amended Complaint in *Denton I* states that it arises out of actions taken

15   while plaintiff was confined at the Washington State Penitentiary ("WSP"). *Denton I*, Dkt. 116 at

16   2. The individual defendants in that matter—aside from three DOC headquarters employees—are

17   staff at either WSP or the Monroe Corrections Complex ("MCC") where plaintiff was later

18   transferred. *Id*. at 1; *Denton I*, Dkt. 18-2 (address list identifying location of defendants).

19   Similarly, *Denton II* addresses primarily the actions of defendants identified as staff at MCC.

20   *Denton II*, Dkt. 10 at 36. In short, plaintiff's claims arise out of the conduct of defendants at three

21   different facilities, during three different time periods, by differing sets of defendants with only

22   minimal overlap.

23

24

1    Indeed, only two of the defendants in the instant action—DOC headquarters employees

2    Tim Thrasher and Karie Rainer—are defendants in *Denton I* and only one of them—Karie

3    Rainer—is a defendant in *Denton II*. The vast majority of the 23 defendants in this case, the 13

4    individual defendants in *Denton I* and the 19 defendants in *Denton II* are unique to each case.

5    Second, while the allegations of Claim I in this case share some common allegations

6    regarding DOC policies with the other two cases, the averments are made against different sets

7    of defendants, for conduct at different institutions. In addition, conduct alleged in this case

8    includes actions—such as alleged retaliation against plaintiff for his pursuit of *Denton I* and

9    *Denton II*, and defendants' alleged refusal to release plaintiff from maximum custody at SCCC—

10   that took place after the other two cases were filed. Dkt. 14 at 4. The three cases also potentially

11   implicate different defenses: for example, plaintiff's grievance history and exhaustion of

12   administrative remedies will be different at each facility.

13   The injunctive relief plaintiff seeks is also largely different across his three cases. In this

14   matter, plaintiff seeks ten different injunctions; only one of them, request for relief B, is common

15   to either of the other cases—overlapping with request A in *Denton II*. *Compare* Dkt. 14 at 29

16   *with Denton II* Dkt. 10 at 31. But even there, the parties against whom the injunction is sought

17   are different: in this case, plaintiff seeks to enjoin the individual defendants (including four who

18   are unique to this case), while in *Denton II*, he seeks to enjoin the State. *Id.*

19   The cases are also in widely differing procedural postures. This case is in its early stages;

20   *Denton II* is in the midst of discovery (*Denton II*, Dkt. 58); and in *Denton I* the court has entered

21   partial summary judgment dismissing most of plaintiff's claims, with a single claim remaining

22   upon which the parties are preparing to file dispositive motions. *Denton I*, Dkts. 137, 142, 146,

23   155.

24

The Court is mindful of the difficulties posed by potentially overlapping injunctive relief, but it is premature to assume that each case will necessarily reach a stage where such a problem would arise. Based upon the Court's examination of these three actions, the Court recommends denial of defendants' motion to dismiss plaintiff's Claim I without prejudice.

## II. Racial Slurs and False Accusations

Plaintiff alleges that defendants harassed and addressed him with racial slurs and name-calling and that they brought falsified custodial assault claims against plaintiff in order to receive compensation from an outside membership organization that provides support for officers who have been assaulted. Dkt. 14 at 8–11. Defendants argue that this alleged conduct does not support a standalone claim under Section 1983. Dkt. 44 at 9–10.

**A. Standalone Claims**

Defendants are correct that the alleged actions do not support standalone claims. "[V]erbal harassment or abuse … [alone] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (citation and internal quotation omitted). Similarly, a prisoner has no interest in freedom from false disciplinary accusations. *Hines v. Gomez,* 108 F.3d 265, 268–69 (9th Cir. 1997); *Freeman v. Rideout,* 808 F.2d 949, 951 (2nd Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections ... are provided."). Thus, the Court recommends that, to the extent plaintiff seeks to bring standalone claims for alleged harassment or false infractions, his claims be dismissed without leave to amend.

1  **B.    Retaliation**

2          However, the Court also understands plaintiff's complaint to allege that defendants'

3  actions were taken in retaliation for plaintiff's litigation and grievance activity. Dkt. 14 at 9.

4  Prisoners have a right to be free from the filing of false disciplinary charges in retaliation for the

5  exercise of constitutionally protected rights. *Watison v. Carter,* 668 F.3d 1108, 1115 (9th Cir.

6  2012); *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir.1995).

7          Under the First Amendment, prison officials may not retaliate against prisoners for

8  initiating litigation or filing administrative grievances. *Rhodes v. Robinson,* 408 F.3d 559, 568

9  (9th Cir. 2005). "Within the prison context, a viable claim of First Amendment retaliation entails

10  five basic elements: (1) An assertion that a state actor took some adverse action against an

11  inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

12  inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

13  legitimate correctional goal." *Id.* at 567–68. Plaintiff must establish a nexus between the alleged

14  retaliatory act and the protected activity, *see Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th

15  Cir. 2000), and must show he suffered more than minimal harm, *Rhodes,* 408 F.3d at 568 n. 11.

16  Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for

17  the conduct of which he complains. *Pratt,* 65 F.3d at 806 (9th Cir. 1995).

18          Here, plaintiff alleges that he engaged in protected activity by filing lawsuits and

19  grievances. *See Brodheim v. Cry,* 584 F.3d 1262, 1269 (9th Cir. 2009) (filing grievances is

20  protected conduct). Plaintiff alleges that defendants have taken adverse action against him—

21  harassment and bringing false accusation. *See Pratt,* 65 F.3d at 806 (9th Cir. 1995) (to state a

22  retaliation claim, the adverse action need not constitute an independent constitutional violation).

23  Allegations of harm are sufficient to state a retaliation claim without any additional allegation of

24  a chilling effect. *See Id.* at 807–08. Although plaintiff has not expressly alleged a lack of

legitimate penological purpose, it is difficult to imagine a penological purpose for harassment and false charges. Thus, plaintiff's complaint alleges facts which, when taken as true, address the first, third and fifth elements of a retaliation claim.

But plaintiff has alleged no facts supporting the nexus requirement. He alleges only that defendants' acts "[were] all done out of retaliation and evil intent of plaintiff having two open civil suits . . . and due to plaintiff exercising his first amendment constitutional right to participate in the grievance program . . ." Dkt. 14 at 9. Plaintiff alleges no facts establishing a link or causal connection between his protected activity and defendants' adverse action. Plaintiff has not alleged facts sufficient for the Court to find it "plausible" that defendants retaliated against him. *See Iqbal*, 556 U.S. at 681. Accordingly, the court recommends that plaintiff's retaliation claim within Claim II be dismissed with leave to amend. In his amended complaint, plaintiff must allege facts supporting a causal link between his protected activity and the alleged adverse action taken by defendants.

**C.    Equal Protection**

Plaintiff's response to defendants' motion argues that defendants' actions violate his Fourteenth Amendment right to equal protection. Dkt. 55 at 20–23. Defendants contend that plaintiff has not alleged facts establishing the essential elements of an Equal Protection claim. Dkt. 56 at 4–5.

"To state a § 1983 claim for violation of the Equal Protection Clause, a plaintiff must show that he was treated in a manner inconsistent with others similarly situated, and that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir. 2005) (internal quotations omitted). To allege an equal protection violation based on race or other protected status, plaintiff "must show that the defendant acted with an intent or purpose to

1   discriminate against him based upon his membership in a protected class. Intentional

2   discrimination means that a defendant acted at least in part *because* of a plaintiff's protected

3   status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (citations and quotations

4   omitted).

5       Plaintiff has not alleged the required elements of an equal protection claim. He states that

6   he is "the only African American" in the SCCC maximum custody unit (Dkt. 55 at 20), but that

7   fact alone cannot support a claim. Plaintiff does not identify any "similarly situated" persons

8   who were treated differently as a result of race, nor has he identified the treatment he claims is

9   discriminatory. Plaintiff alleges that he has been subjected to insults and racial slurs, but verbal

10  abuse alone is insufficient to support a constitutional violation. *Oltarzewski,* 830 F.2d at 139.

11      Plaintiff has not alleged facts sufficient to state an Equal Protection claim. Accordingly,

12  the Court recommends that to the Equal Protection claim within Claim II be dismissed with leave

13  to amend.

14                        **III. THC Prescription**

15      Plaintiff claims defendants were deliberately indifferent to a serious medical need and

16  violated his due process rights when he was refused a prescription for THC for his headaches and

17  PTSD. Dkt. 14 at 13–16. Defendants contend that plaintiff has neither an Eighth Amendment

18  right nor a Fourteenth Amendment liberty interest in being prescribed a particular medication.

19      Defendants are correct. An Eighth Amendment claim requires a showing that defendants

20  acted with deliberate indifference—which is shown by a "purposeful act or failure to respond to

21  a prisoner's pain or possible medical need, and harm caused by the indifference. *Jett v. Penner*,

22  439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1060 (9th Cir.

23  1997) (en banc)). The defendants must have known of, but disregarded, an excessive risk to the

24

1    plaintiff's health. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). A difference of opinion about

2    treatment between plaintiff and prison medical authorities "does not give rise to a § 1983 claim."

3    *Franklin v. Oregon,* 662 F.2d 1337, 1344 (9th Cir. 1981).

4         Here, plaintiff does not allege that he did not receive medical care or that defendants

5    disregarded his medical needs; he asserts only that he did not receive the *specific* medication he

6    desires. Indeed, the attachments to plaintiff's complaint and his response to defendants' motion

7    show that plaintiff received medication for his headaches and was offered care, including

8    medication, for his mental illness. Dkt. 14 at 15; Dkt. 55 at 45. Plaintiff's preference for a

9    particular medication fails to state a claim for deliberate indifference. *Toguchi v. Chung*, 391

10   F.3d 1051, 1058 (9th Cir. 2004).

11        Plaintiff likewise does not have a Fourteenth Amendment right to THC. Plaintiff argues

12   that because marijuana is legal in Washington, he is entitled to due process before he can be

13   "deprived" of it. Dkt. 14 at at 13. Plaintiff's claim is meritless. Plaintiff has a right to medical

14   care, but not to any particular medication. *Toguchi*, 391 F.3d at 1051. Furthermore, the due

15   process right applies to a restriction placed upon prisoners only if it "imposes atypical and

16   significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v.*

17   *Conner*, 515 U.S. 472, 483–84 (1995). Even if marijuana may be legal under state law to the

18   population outside of a prison, so—as defendants observe (Dkt. 56 at 5)—are many other things

19   denied to prisoners, such as alcohol and weapons. Prison officials are accorded "wide-ranging

20   deference" in matters they deem necessary to maintain security and discipline. *Bell v. Wolfish*,

21   441 U.S. 520, 547, 99 S. Ct. 1861, 1878, 60 L. Ed. 2d 447 (1979). Plaintiff has no liberty interest

22   in receiving a medication of his own choice.

23

24

1    Because plaintiff's Eighth and Fourteenth Amendment claims for failure to prescribe his

2    desired medication fail as a matter of law, any amendment would be futile. The court therefore

3    recommends that plaintiff's Claim III be dismissed without leave to amend. *Saul*, 928 F.2d at

4    843.

### IV. Enforcement of Disciplinary Sanctions

6    Plaintiff's Claim IV alleges that defendants Baltzell, Kern, Frakes, and Haynes retaliated

7    against him by enforcing disciplinary sanctions restricting plaintiff's store, Jpay, visitation,

8    telephone and weightlifting privileges. Dkt. 14 at 17. Defendants argue that plaintiff fails

9    sufficiently to allege their personal participation in the purported violation of his rights.

10   To state a claim under Section 1983, plaintiff must allege facts demonstrating that each

11   defendant caused, or personally participated in the alleged harm. *See Arnold v. Int'l Bus.*

12   *Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). Plaintiff fails to allege that any of the

13   defendants named in Claim IV caused or personally participated in imposing the sanctions he

14   challenges.

15   Plaintiff alleges no act or omission by defendants Frakes and Haynes with respect to the

16   disciplinary sanctions. He has therefore failed to state a claim against them.

17   With respect to defendant Baltzell, plaintiff alleges only that she "sent emails to the store

18   people to lift the sanction but they were never lifted." Dkt. 14 at 17. Plaintiff does not allege that

19   defendant Baltzell imposed the sanction or even enforced it—instead, he argues that she

20   unsuccessfully tried to revoke it. Plaintiff has not alleged sufficient facts to establish defendant

21   Baltzell's personal participation in the imposition of retaliatory disciplinary sanctions.

22   Plaintiff's allegations regarding defendant Kern state that defendant Kern takes a store

23   order from him weekly but "never has any store for me," and addresses plaintiff with insults and

24

1    racial slurs. Dkt. 14 at 18. Plaintiff alleges no facts establishing that defendant Kern played any

2    role in imposing the disciplinary sanctions or has any authority to alter them. Plaintiff has failed

3    to state a claim against defendant Kern for retaliatory disciplinary sanctions.

4         Furthermore, even if plaintiff had sufficiently alleged personal participation, he has failed

5    to adequately allege a claim for retaliation. Plaintiff must allege facts establishing that the

6    disciplinary sanctions constituted (1) adverse action (2) because of (3) plaintiff's protected

7    conduct and the sanctions (4) chilled plaintiff's exercise of his First Amendment rights, and (5)

8    the sanctions did not reasonably advance a legitimate correctional goal. *Rhodes* at 567–68.

9    Plaintiff has failed to allege facts establishing a nexus between his protected litigation and

10   grievance activities and the disciplinary sanctions, and has failed to allege facts establishing that

11   the sanctions did not advance a legitimate correctional goal. *Huskey*, 204 F.3d at 899; *Pratt,* 65

12   F.3d at 806 (9th Cir. 1995).

13        Because plaintiff has failed to allege facts establishing either personal participation by the

14   named defendants or the required elements of a retaliation claim, the Court recommends that

15   plaintiff's Claim IV be dismissed, with leave to amend to correct these deficiencies.

16                    **V. Restrictions on Sexually Explicit Mail**

17        Plaintiff alleges that defendants violated his First and Fourteenth Amendment rights by

18   rejecting his incoming mail because it contained sexually explicit material prohibited by DOC

19   regulations. Dkt. 14 at 19–22. Defendants argue it is well settled that prison policies against

20   sexually explicit materials are constitutional. Dkt. 44 at 13–14.

21        Plaintiff does not contend that the materials at issue do not fall within the DOC policy

22   prohibiting explicit materials; instead, he claims that the policy itself is unconstitutional because

23   it is not reasonably related to a legitimate penological interests under the test enunciated in

24

1  *Turner v. Safley,* 482 U.S. 78, 89 (1987). Dkt 14 at 21. Plaintiff's claim is contrary to established

2  case law. Courts have long recognized that regulations restricting sexually explicit materials are

3  rationally connected to legitimate penological concerns and satisfy the *Turner* test. *Thornburgh*

4  *v. Abbott*, 490 U.S. 401, 415 (1989) (upholding the validity of a federal prison regulation

5  restricting sexually explicit material, deeming the "legitimacy" of the regulations' purpose to be

6  "beyond question"); *Mauro v. Arpaio*, 188 F.3d 1054, 1057–63 (9th Cir. 1999) (en banc)

7  (upholding Arizona regulation prohibiting prisoners from possessing  "sexually explicit

8  materials," defined as "materials that show frontal nudity," including "personal photographs,

9  drawings, and magazines and pictorials that show frontal nudity"); *Bahrampour v. Lampert*, 356

10  F.3d 969, 979 (9th Cir. 2004) (holding prison officials may prohibit receipt of sexually explicit

11  materials in light of concerns about preventing the sexual harassment of prison guards and other

12  inmates); *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999) (regulation prohibiting receipt of

13  sexually explicit images in the prison did not unconstitutionally abridge the inmate's First

14  Amendment rights). Other district courts in Washington addressing the same regulation plaintiff

15  challenges here have found that it falls well within the foregoing authorities and is reasonably

16  related to legitimate penological interests. *See Powell v. Riveland*, 991 F. Supp. 1249, 1254

17  (W.D. Wash. 1997) (finding Washington DOC Policy restricting sexually explicit materials was

18  parallel to the regulation upheld in *Thornburgh* and therefore facially valid); *Clark v. Mason*, No.

19  C04-1647-JCC, 2007 WL 2417154, at *1, (W.D. Wash. Aug. 20, 2007) ("the facial validity of

20  the regulation on which these actions were based, DOC Policy 450.100, has already been upheld

21  and thus is not in question" (citing *Powell*, 991 F.Supp. at 1254)); *Grenning v. Klemme*, 34 F.

22  Supp. 3d 1144, 1155 (E.D. Wash. 2014) ("[N]o constitutional right is violated when prison staff

23

24

refuse to deliver sexually explicit materials to an inmate because it is reasonably related to penological interests").

Plaintiff's claim that DOC's policy is not reasonably related to legitimate penological interests fails as a matter of law. Because any amendment of this claim would be futile, the Court recommends that plaintiff's Claim V be dismissed without leave to amend.

## VI. Enforcement of "No Reading Material" Sanction

Plaintiff alleges that defendants Haynes, Stroup, Baltzell, and L'Heureux enforced a retaliatory sanction prohibiting plaintiff from possessing reading material. Dkt. 14 at 23. Defendants argue that plaintiff has failed to allege facts establishing the personal participation of the defendants in the retaliatory imposition of the sanction and has failed to allege facts establishing the elements of retaliation. Dkt. 44 at 14–17.

### A. Retaliation

Plaintiff's retaliation allegations with respect to Claim VI suffer from the same defects identified with respect to Claim IV.

First, plaintiff does not allege that any of the named defendants imposed the allegedly retaliatory sanction or caused the alleged harm. Plaintiff asserts that Defendant Haynes failed to respond to his kites (Dkt. 14 at 27), that Sergeant Stroup commented on plaintiff's lawsuits when asked about the reading material sanction (*Id.*), that defendant Baltzell responded to kites and "continued to enforce" the sanction (Dkt. 14 at 26) and that defendant L'Heureux "continued to enforce" the sanction (*Id.*). None of these allegations establishes the personal participation of any of the defendants in imposing the sanction, nor do the allegations indicate whether any defendant had authority either to impose or to revoke the sanctions. Plaintiff has failed to allege facts demonstrating how each defendant "caused or personally participated in causing" the imposition of the allegedly retaliatory sanction. *Arnold*, 637 F.2d at 1355.

1        Second, plaintiff has failed to allege facts supporting the elements of a retaliation claim.

2  While he has alleged protected activity and adverse action, just as with Claim IV plaintiff has

3  failed to allege facts establishing a nexus between his protected litigation and grievance activities

4  and the disciplinary sanctions. He has also failed to allege facts establishing that the sanctions

5  did not advance a legitimate correctional goal. *Huskey*, 204 F.3d at 899; *Pratt,* 65 F.3d at 806

6  (9th Cir. 1995).

7        Because plaintiff has failed to allege facts establishing either personal participation by the

8  defendants or the required elements of a retaliation claim, the Court recommends that plaintiff's

9  Claim IV be dismissed, with leave to amend to correct these deficiencies.

10  **B.  Due Process**

11        Plaintiff also contends that defendants improperly seized and destroyed his books, papers

12  and periodicals as part of the reading material sanction. Dkt. 14 at 24. He contends in his

13  response that defendants' actions violated DOC policies governing prisoners' personal property

14  and mail. Dkt. 55 at 33.

15        The Due Process Clause protects prisoners from being deprived of property without due

16  process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), and prisoners have a protected

17  interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However,

18  only an authorized, intentional deprivation of property is actionable under the Due Process

19  Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

20        Here, plaintiff alleges that the deprivation violated DOC policy; he is therefore alleging

21  that the deprivation was unauthorized. Dkt. 55 at 33. An unauthorized intentional deprivation of

22  property by a state employee does not constitute a violation of the Fourteenth Amendment if a

23  meaningful post-deprivation remedy for the loss is available under state law. *Hudson*, 468 U.S. at

24  534. The State of Washington provides a meaningful post-deprivation remedy for the intentional

1   or negligent loss of property by state agents and employees by allowing for a suit in Superior

2   Court once a claimant has completed the state's tort claim process. *Jeffries v. Reed*, 631 F. Supp.

3   1212, 1216 (E.D. Wash. 1986)  Because plaintiff alleges that he has been deprived of his

4   personal property based on an unauthorized action, Washington State provides a post-deprivation

5   remedy for the alleged action and thus, plaintiff has not alleged a viable claim for relief.

6        The Court recommends that plaintiff's Fourteenth Amendment claim for deprivation of

7   property contained within Claim VI be dismissed with leave to amend.

8                          **VII. Qualified Immunity**

9        Finally, defendants argue that they are entitled to qualified immunity. Dkt. 44 at 17–19.

10   Qualified immunity shields officials from civil damages liability "as long as their actions could

11   have reasonably been thought consistent with the rights they are alleged to have violated."

12   *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). It is analyzed by a two-step process, by which

13   the court must determine (1) whether defendant's conduct "violated a constitutional right" and

14   (2) whether the right was "clearly established" at the time of the alleged violation." *Saucier v.*

15   *Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S.

16   223 (2009).

17        Defendants' motion for qualified immunity appears to be limited to plaintiff's claims

18   related to "THC, sexually explicit material and reading material" (i.e., to plaintiff's Claims III, V

19   and VI). Dkt. 44 at 19. Because the Court recommends dismissal of those claims for other

20   reasons, it need not reach defendants' qualified immunity argument.

21                             **CONCLUSION**

22        For the reasons set forth above, the Court recommends that defendants' motion be

23   granted in part and denied in part. Specifically, the Court recommends that plaintiff's claims for

24

1  denial of prescription THC (Claim III), for restriction of sexually explicit materials (Claim V)

2  and any standalone claims for name calling/ethnic slurs and false accusations within Claim II be

3  dismissed without leave to amend. The Court recommends that plaintiff's retaliation and equal

4  protection claims contained within Claim II, plaintiff's allegations of retaliation in Claims IV and

5  VI and his Fourteenth Amendment claim within Claim VI be dismissed with leave to amend. The

6  Court recommends that defendants' motion to dismiss plaintiff's solitary confinement claims

7  (Claim I) be denied without prejudice. Finally, the court recommends that the unserved

8  defendant "Dr. Peterson" be dismissed from this action without prejudice.

9          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

10  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

11  6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

12  review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

13  of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

14  *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

15  imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **May 14, 2021**,

16  as noted in the caption.

17          Dated this 28th day of April, 2021.

18

19

20  J. Richard Creatura
   Chief United States Magistrate Judge

21

22

23

24